UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SEN ZHANG,<br><br>      Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>      Defendants. | **Civil Action No. 24-cv-10145** |

## COMPLAINT

Plaintiff, Sen Zhang ("Plaintiff" or "Zhang"), by and through his undersigned counsel, hereby files this Complaint against The Individuals, Corporations, Limited Liability Companies, Partnerships, And Unincorporated Associations identified on Schedule A hereto (collectively, "Defendants"). In support thereof, Plaintiff states as follows:

### JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over this action pursuant 28 U.S.C. §§ 1331 and 1338 because the claim in this action is brought under the Copyright Act, 17 U.S.C. § 101, *et seq*.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants. Each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through their operation of, or assistance in the operation of, the fully interactive, commercial Internet Stores

1

identified herein. Specifically, each of the Defendants are directly reaching out to do business with Illinois residents by operating, or assisting in the operation of, one or more commercial, interactive e-commerce stores that sell products directly to Illinois consumers that incorporate infringing and counterfeit versions of Plaintiff's federally registered copyright-protected work. In short, each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## INTRODUCTION

3. Plaintiff does business in printing for tourism. This action has been filed by Plaintiff to combat online counterfeiters and infringers who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit and infringing versions of Plaintiff's federally registered copyright-protected design (the "Counterfeit Products"). On information and belief, Defendants create Internet Stores ("the Defendant Internet Stores") by the dozens and advertise on them what appear to be genuine copies of Plaintiff's two-dimensional visual artistry, without any permission or license from Plaintiff.

4. The Defendant Internet Stores share unique identifiers establishing a logical relationship between them and reflecting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation, including changing the names of their stores multiple times, opening new stores, helping their friends open stores, and making subtle changes to their products.

5. Plaintiff is forced to file this action to combat Defendants' infringement of his copyright-protected work of visual art, as well as to protect unknowing consumers from purchasing

the Counterfeit Products over the Internet. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of Plaintiff's copyright and, therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for the injury it is sustaining.

## THE PARTIES

**Plaintiff**

6. Plaintiff is a Sole Proprietor of Rainbow Holiday in the State of Nevada.

7. Plaintiff is the owner of several copyrighted designs which have been registered with the U.S. Copyright Office, one of which is asserted in this action (Plaintiff's "Copyrighted Work"). The Certificate of Registration for Plaintiff's Copyrighted Work is attached hereto as **Exhibit 1** and will be filed under seal with the Court's permission.

8. The Copyrighted Work is licensed to use on textiles and household products ("Plaintiff's Products") through on-line retail channels, with the potential to receive hundreds of thousands of dollars annually.

9. Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and publicly display Plaintiff's Copyrighted Work.

**The Defendants**

10. Defendants are individuals and business entities who reside in the People's Republic of China and other foreign jurisdictions. Defendants conduct business or assist in business conducted throughout the United States (including within the State of Illinois and this Judicial District) through the manufacturing, online advertising and offering for sale, and importation and distribution of products that incorporate counterfeit and infringing versions of

Plaintiff's Copyrighted Work. Defendants conduct business, or assist in business conducted, throughout the United States (including within the State of Illinois and this Judicial District) through the public display, online advertising and selling, and importation and distribution, of items that incorporate counterfeit and otherwise infringing versions of Plaintiff's Copyrighted Work. Each Defendant has targeted Illinois by offering to sell and selling, or knowingly assisting in selling or offering to sell, the Counterfeit Products to Illinois consumers through various online retail platforms.

11. Defendants appear to be an interrelated group of counterfeiters and infringers, who create countless Defendant Internet Stores on various third-party online platforms and design these stores to appear to use genuine versions of Plaintiff's Copyright Work, while they actually selling inferior counterfeit imitations of Plaintiff's Products. The Defendant Internet Stores share unique identifiers, such as common design elements, the same or similar: Counterfeit Products they offer for sale, product descriptions, shopping cart platforms, and accepted payment methods. They also use the same or similar check-out methods, absent or fake contact information, identically priced or similarly priced Counterfeit Products and volume sales discounts. These numerous similarities establish a logical relationship between Defendants and shows the likelihood that their illegal operations arise out of the same transaction or occurrence. These tactics used by Defendants to conceal their identities, and the full scope of their counterfeiting operation, make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## DEFENDANTS' UNLAWFUL CONDUCT

12. Plaintiff's business success has resulted in significant counterfeiting and other infringement of Plaintiff's Copyrighted Work. Consequently, Plaintiff maintains an anti-counterfeiting program and investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. Plaintiff has identified fully interactive e-commerce stores, including the Defendant Internet Stores, offering for sale and/or selling Counterfeit Products to consumers in this Judicial District and throughout the United States.

13. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price ("MSRP") of goods seized by the U.S. government in fiscal year 2023 was over $2.7 billion. (*See* **Exhibit 2** at 2). Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. (*See* **Exhibit 3** at 8).

14. E-commerce retail platforms such as those used by Defendants do not subject new sellers to verification and confirmation of their addresses and identities, thus allowing infringers to regularly use false names and addresses when registering with these e-commerce retail platforms and open multiple Defendant Internet Stores in attempts to avoid detection.

15. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Defendant Internet Store aliases identified Schedule A attached hereto, offering shipping to the United States, including Illinois, accepting payment in U.S. dollars and, on information and belief, having sold Counterfeit Products to residents of Illinois.

16. As stated above, Defendants employ and benefit from substantially similar advertising and marketing strategies. Defendants facilitate sales by designing Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Defendant Internet Stores appear sophisticated and accept payment in U.S. dollars via credit cards, Amazon Pay, Western Union, PayPal, and other reputable payment platforms. Defendant Internet Stores often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to copy, distribute, or publicly display Plaintiff's Copyrighted Work, and none of the Defendants are authorized retailers of genuine versions of Plaintiff's Products.

17. Upon information and belief, Defendants have engaged in fraudulent conduct when registering the Defendant Internet Stores by providing false, misleading, and/or incomplete information to e-commerce platforms. Upon information and belief, certain Defendants have anonymously registered and maintained aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

18. Upon information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products on e-commerce platforms such as Amazon, Walmart, eBay, Temu, and others. Such seller alias registration patterns are one of many common tactics used by Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

19. Even though operating under multiple fictitious aliases, unauthorized on-line retailers such as the Defendant Internet Stores often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other identifying information and likewise omit other seller aliases that they use. Further, such unauthorized retailers

include other notable common features on their internet stores such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, similarities in price and quantities, and/or the use of the same text and images. The counterfeit products offered for sale by unauthorized retailers such as the Defendant Internet Stores often bear irregularities and indicia of being counterfeit that are similar to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that these unauthorized retailers are interrelated.

20. Groups of counterfeiters such as Defendants here are typically in communication with each other. They regularly participate in WeChat chat rooms, and also communicate through websites such as sellerdefense.cn and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and new lawsuits. (*See* **Exhibit 4**).

21. Counterfeiters such as Defendants commonly operate under multiple seller aliases and payment accounts so that they can continue operation in spite of enforcement efforts. Analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court. Further analysis of similar cases in this District shows that defendants often sweep their accounts in case their infringing activities are detected, and their accounts are frozen, at which time, defendants may settle for small amounts to regain access to the remaining funds or abandon their stores altogether and start fresh with a new alias. Here, on information and belief, Defendants maintain offshore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such off-shore accounts based outside of the jurisdiction of this Court. On information and belief,

Defendants undertake such activity in an attempt to avoid payment of any monetary judgment awarded based on their counterfeiting and other infringement of intellectual property rights.

22. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use illicit copies of Plaintiff's Copyrighted Work in connection with the reproduction, public display, advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States, including Illinois, over the Internet.

23. Defendants operate at least the online marketplace accounts identified in Schedule A and engage in the unauthorized reproduction, public display, and distribution of Plaintiff's Copyrighted Work and/or works substantially similar thereto.

24. Defendants' unauthorized reproduction, distribution, and public display of Plaintiff's Copyrighted Work is irreparably harming Plaintiff.

## COUNT I
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 101 *et seq.*)

25. Plaintiff re-alleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 24 above.

26. Plaintiff's Copyrighted Work constitutes a creative, original work of authorship, fixed in a tangible medium of expression, and protectable under U.S. copyright law. *See* 17 U.S.C. § 102.

27. Plaintiff is the owner of valid and enforceable copyright in Plaintiff's Copyrighted Work.

28. Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for

8

Plaintiff's Copyrighted Works and has obtained valid copyright registration for Plaintiff's Copyrighted Work.

29. Defendants do not have any ownership interest in Plaintiff's Copyrighted Work.

30. Defendants had access to the Plaintiff's Copyrighted Work via the internet.

31. Without authorization from Plaintiff, or any right under the law, Defendants have, *inter alia*, willfully copied, reproduced, publicly displayed, and distributed, products incorporating Plaintiff's Copyrighted Work, in connection with their operation of the Defendant Internet Stores.

32. Defendants' Counterfeit Products incorporate works that are virtually identical to and/or are substantially similar to Plaintiff's Copyrighted Work.

33. Defendants have, therefore, individually, as well as jointly and severally, infringed and continue to infringe Plaintiff's copyrights in Plaintiff's Copyrighted Works in violation of 17 U.S.C. § 501(a). *See also* 17 U.S.C. §§ 106(1), (3), (5).

34. Defendants reap the benefits of their unauthorized reproduction, public display, and distribution, of Plaintiff's Copyrighted Work through their receipt of substantial revenue, including substantial profit, driven by sales of their Counterfeit Products.

35. Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Counterfeit Products that include Plaintiff's Copyrighted Work.

36. Defendants' infringement has been willful, intentional, malicious, and purposeful, and in disregard of, and with indifference to, Plaintiff's rights.

37. Defendants, by their actions, have caused financial injury to Plaintiff in an amount to be determined at trial.

38. Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiff irreparable injury that cannot fully be compensated for or measured monetarily. Plaintiff has no adequate remedy at law for such injury.

39. In light of the foregoing, and as contemplated by 17 U.S.C. § 502, Plaintiff seeks temporary, preliminary, and permanent injunctive relief prohibiting further infringement of Plaintiff's copyrights by Defendants.

## COUNT II

## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125 (a))

40. Plaintiff re-alleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 39 above.

41. Defendants' use of material protected by Plaintiff's Copyrighted Work for the promotion, marketing, offering for sale, and the sale of inferior Infringing Products has created and is creating a likelihood of confusion and deception among the general public as to false affiliation, connection, or association with Plaintiff's brand or the false origin, sponsorship, or approval of Defendants' counterfeit products under Plaintiff's brand or the false origin, sponsorship, or approval of Defendants' counterfeit products under Plaintiff's brand.

42. By using Plaintiff's Copyrighted Work in connection with Defendants' sale of unauthorized products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of Defendants' inferior quality products.

43. Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of its knockoff products to the general public under 15 U.S.C. §§ 1114, 1125.

44. Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to the company's reputation and the goodwill of the Plaintiff's brand.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants and entry of an Order directing as follows:

(1) Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with them be permanently enjoined and restrained from:

    (a) Reproducing, distributing, publicly displaying, and preparing derivative works based upon the Copyrighted Work;

    (b) making, using, offering to sell, selling, and importing any products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of the Copyrighted Work;

    (c) effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth herein; and

    (d) aiding, abetting, contributing to, or otherwise assisting anyone in infringing Plaintiff's copyright in Plaintiff's Copyrighted Work.

(2) Directing that Defendants deliver for destruction all products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of the Copyrighted Work.

(3) Entering an Order that all banks, savings and loan associations, other financial institutions, payment processors, on-line marketplaces, and other third-parties who are in active

concert or participation with Defendants, shall, within two (2) business days of receipt of an Order entered by this Court:

    (a)    Locate all accounts connected to Defendants;

    (b)    Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

    (c)    Transfer to Plaintiff all funds restrained in such accounts up to the amount of any monetary relief awarded to Plaintiff by this Court within ten (10) business days of receipt of such Order.

(4) Entering an Order that, until Plaintiff has recovered full payment of monies owed to it by Defendants, in the event that any new financial accounts controlled or operated by Defendants are identified, Plaintiff shall have the ongoing authority to direct any banks, savings and loan associations, other financial institutions, payment processors, and on-line marketplaces, with whom such newly identified accounts are maintained, to carry out the following activity:

    (a)    Locate all accounts connected to Defendants;

    (b)    Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

    (c)    Transfer any funds restrained in such accounts to Plaintiff within ten (10) business days of receipt of this Order.

(5) Awarding Plaintiff statutory damages based on Defendants' willful copyright infringement, pursuant to 17 U.S.C. § 504(c)(2), in an amount of $150,000 per infringed work, per Defendant;

(6) Alternatively, should the Court not award Plaintiff statutory damages, that Defendants be ordered to pay to Plaintiff all actual damages sustained by Plaintiff as a result of

Defendants' infringement, said amount to be determined at trial; and that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringement of Plaintiff's copyright in Plaintiff's Copyrighted Work as complained of herein, to the extent not already accounted for in the above-referenced assessment of actual damages;

(7) Awarding Plaintiff his reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(8) Awarding Plaintiff any and all other relief that this Court deems just and proper.

Date: October 14, 2024 October 14, 2024                      Respectfully submitted,

By: /s/ Abby Neu
Abby Neu, ARDC # 6327370
Shengmao (Sam) Mu, NY #5707021
Keaton Smith, ARDC # 6347736
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: (917) 858-8018
Email: smu@whitewoodlaw.com

*Counsel for Plaintiff*